# Armstrong County *v.* T. V. McKee, W. C. Bailey and S. G. Donaldson, Appellants.

*County auditors—Filing report—Appeals—Computation of time.*

County auditors who do not file their report with the prothonotary may be compelled to do so by writ of mandamus, but until the report is filed by them it remains in their own hand, and under their own control, and no other person who may obtain possession of it has any right to represent them, or to act for them in regard to it.

Where county auditors deposit their report with the prothonotary and cause it to be marked "filed" with the date inclosed thereon, they have done their duty. If the prothonotary retain the report three months, and an attorney at law then obtains possession of it from the prothonotary, and presents it in open court and obtains an ex parte order directing it to be filed, the time within which an appeal may be taken from the report is to be computed from the date when the report was filed by the auditors with the prothonotary, and not from the date of the ex parte order of court.

Argued Oct. 14, 1895. Appeal, No. 11, Oct. T., 1895, by defendants, from order of C. P. Armstrong Co., Sept. T., 1891, No. 46, directing county auditors' report to be filed, and allowing an appeal therefrom. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Appeal from account of county auditors.

From the record it appeared that on February 13, 1891, the county auditors deposited their report with the prothonotary who marked it "filed."

The report remained in the prothonotary's office until June 1, 1891, when D. L. Nulton, Esq., an "attorney for sundry citizens of said county" presented the report in open court, and

asked the court to mark it filed. It was objected that the report had been on file since February 13, 1891, and that the counsel did not represent the auditors, and had no authority to present it for filing. The court, however, on June 12, 1891, ordered the report to be filed as of that date. On August 8, 1891, 176 days after the auditors had filed their report in the prothonotary's office, and 57 days after the filing of the report at the instance of Mr. Nulton, Mr. Nulton presented a petition with the names of eighteen persons affixed thereto, praying the court to grant them an appeal under the provisions of the act of June 12, 1878, P. L. 208, and filed therewith a recognizance in the sum of $500.

The court allowed the appeal as prayed for and approved the recognizance, giving, however, until September 7, 1891, to file exceptions and to move to strike off the appeal.

On September 7, 1891, exceptions were filed. The petitioners then presented a bond in the sum of $500, which was approved by the court. The exceptions were subsequently overruled and the rule to strike off the appeal discharged. The court then framed an issue in which the county of Armstrong was made the plaintiff and T. V. McKee, W. C. Bailey and S. G. Donaldson, county commissioners during the year 1890, defendants.

*Errors assigned* were, (1) order directing the filing of the report; (2, 3) allowance of appeal.

*M. F. Leason* and *J. B. Neale*, for appellants.—It is no excuse for the meddling with the report that the auditors failed to perform their entire duty. In the present case it was assumed that the auditors had failed in the performance of their duty in proper form, and therefore the court, at the instance of others, undertook to complete that work for them. This cannot be done : Schuylkill v. Boyer, 125 Pa. 226 ; act of April 15, 1834, P. L. 545 ; Godstalk v. Northampton, 71 Pa. 324 ; Northampton Co. v. Yohe, 24 Pa. 305.

A paper is said to be filed when it is delivered to the proper officer and by him received to be kept on file: 1 Bouvier's Law Dictionary, 587.

To put upon the files or among the records of the court; to

note on a paper the fact and date of its reception in court: Webster's Dictionary.

In Pennsylvania, where the history of an action is not enrolled, the record consists of the papers properly filed in the cause together with the docket: Clark v. Depew, 25 Pa. 509; Myer v. Verner, 10 W. N. C. 138.

There was no authority to allow the appeal: Nice v. Bowman, 6 Watts, 26; Respublica v. Corbet, 3 Dallas, 475; 20 Am. & Eng. Ency. of Law, 471.

The act of June 12, 1878, P. L. 208, is in violation of the express terms, sec. 20 of art. 3 of the constitution, and also in violation of sec. 3 of art. 3 of the constitution.

*J. W. King* and *J. M. Galbreath, D. L. Nulton* with them, for appellee.—The act of April 15, 1834, P. L. 545, relative to county auditors, requires that, after having settled the accounts of the various officers, their report shall (1) be made to the court of common pleas of the proper county and (2) filed among the records of said court. See sections 48 and 55 of said act. The evident intention of this first requirement is to give to the report that publicity which its charter and purpose demand, and which could not be secured by merely filing it away among the records of the prothonotary's office. It is the law's method of informing the public that the report is completed and ready to be filed: Brown v. Com., 2 Rawle, 40; Wilson v. Clarion Co., 2 Pa. 17; Blackmore v. Allegheny County, 51 Pa. 160; Northampton Co. v. Herman, 119 Pa. 373.

In the absence of any form of appeal prescribed by act of assembly, the petition to court praying that an appeal be granted, accompanied by specifications and the order of court granting the same and framing an issue, was sufficient in form: Nice v. Bowman, 6 Watts, 26; 20 Am. & Eng. Ency. of Law, 471; Anderson's Dictionary of Law, 862.

The title to the act in question embraces but one general subject, to wit: the right of the county in the person of its taxpayers to take part in its own litigation. The different things authorized are all cognate and are different classes of the same general subject. The unity of the subject as expressed in the title would seem to be sufficient. On the other hand the title is sufficiently comprehensive. All that is required is that the

title fairly give notice of the subject of the act, so as reasonably to lead to an inquiry into its body: Allegheny County Home's Case, 77 Pa. 77.

OPINION BY MR. JUSTICE WILLIAMS, November 4, 1895:

The duties of county auditors are defined by the act of 1834 and its supplements. They are required to audit, settle and adjust the accounts of the county commissioners, the county treasurer, the sheriff and the coroner, and make report thereof to the court of common pleas of such county. The fifty-fifth section of the act of 1834 directs the manner in which the report must find its way into the records of the court by the provision that "The report of the auditors shall be filed among the records of the court of common pleas of the respective county and, from the time of being so filed, shall have the effect of a judgment against the real estate of the officer who shall thereby appear to be indebted either to the commonwealth or to the county." All parties interested must take notice of the time when the report is filed, and the time allowed for an appeal runs from that date. The court as such has no function to perform so far as the account is concerned unless an appeal be taken from the settlement made by the auditors and shown by their account. But to make the balances shown by the report against any of the accounting officers a lien against the real estate of such officer such balance must be indexed in the judgment docket: Appeal of Snyder county, 3 Grant, 38.

If the auditors do not file their report with the prothonotary their performance of their official duty may be quickened and compelled by a writ of mandamus, but until it is filed by them it remains in their own hands or under their own control, and no other person who may obtain possession of it has any right to represent them or to act for them in regard to it. If an attorney or any other person obtains possession of the report without the consent of the auditors, this fact clothes him with no power to act for them or to bind them in any manner. He would have no right to file it or to ask the court to order it filed, and if such an order should be made without first giving notice to the auditors and affording them an opportunity to come in and take charge of their own report it would be ex parte, and would conclude neither the auditors nor the officers whose ac-

counts appeared upon the report. The auditors are responsible for the discharge of all the duties the law places on them, including not only an examination of the accounts of the county officers but the tabulation of their work in a report made for the information of tax payers, and the placing of that report "among the records of the court of common pleas of the respective county" so that all who desire to do so may examine it. The facts presented in this case are peculiar. The auditors examined the accounts of the several officers, prepared their report, and then actually lodged it in the hands of the proper officer, the prothonotary of the court of common pleas of Armstrong county, on the 13th day of February, 1891. The same person was also clerk of the court of quarter sessions, and he seems to have entered the report first in the sessions and afterward in the common pleas, but the report was marked filed by him on the day on which he received it, and it remained in his custody down to the June term following. At that term an attorney obtained it from the prothonotary, took it into court and moved the court for an order directing it to be filed. This order was made, and so far as the record indicates without any rule to show cause or notice to the auditors or the officers to be affected. On the 8th of August, this appeal was taken on behalf of several taxpayers. Was this appeal in time? That depends on whether the time is to be computed from the day when the auditors filed their report and procured the date of filing to be noted thereon by the prothonotary, or from the day when it was placed for the second time in the hands of the prothonotary under the ex parte order of the court.

We are of opinion that the computation must begin with the 13th day of Feburary, the day on which the auditors took their report to the proper officer and caused the date to be indorsed thereon by him. They had then discharged their duty. If the docket entries of the officer were incorrect the court could have directed their amendment. If he had given a wrong number to his entries in the records of the common pleas or made any other mistake, the court could have corrected it; but the fact that the auditors had filed their report with the proper officer was beyond doubt. If the appellants had alleged that by reason of the neglect of the officer to make the proper docket entries they had been misled and their search after the

report had been ineffectual so that they were unable to appeal within the time fixed by law, counting from the date of filing, they might have applied to the court for such relief as it was possible to give upon the facts so stated; but the expedient resorted to was novel, and if successful would have made it possible for the appellants to have secured their appeal as readily at the end of three years as of three months. The time for taking an appeal had expired when the order of the court below was made.

The report was no doubt taken from its resting place "among the records of the court of common pleas" into the court room and a motion made for an order directing that it be filed, in order to secure a new date from which to count. The motion could have had no other purpose. The court below was of opinion that a new date from which to compute the time for an appeal was thus obtained. We do not think so. The order if not an absolute nullity was, to say the least, a piece of supererogation. The report was filed with the proper officer by the auditors themselves, and the right to an appeal must be computed from the day on which this was done. This disposes of the case and renders an examination of the several items of surcharge unnecessary. It is possible if the appeal had been in time that some portions of the last four items of surcharge might have been sustained, but it is needless now to inquire. As to the larger part of the sum surcharged we should have been unable to concur with the court below.

The judgment is reversed and the appeal from the report of the auditors is now dismissed.